**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**
CIVIL ACTION NO.  1:18-cv-23786

| | | |
|---|---|---|
| **CHARLES STEINBERG, Individually and on behalf of all others similarly situated,** | : : : : | **CLASS ACTION** |
| **Plaintiff,** | : : | **JURY TRIAL DEMANDED** |
| vs. | : : | |
| **OPKO HEALTH, INC., PHILLIP FROST, ADAM LOGAL, AND JUAN RODRIGUEZ,** | : : : : | |
| **Defendants.** | : | |

**COMPLAINT FOR VIOLATION
OF FEDERAL SECURITIES LAWS**

Plaintiff Charles Steinberg, by his undersigned counsel, brings this action for violations of the federal securities laws on behalf of himself and all other similarly situated persons or entities (the "Class," as defined herein), who purchased or otherwise acquired common stock of Opko Health, Inc. securities ("Opko" or the "Company") from September 26, 2013 through the cessation of trading of its common stock on September 7, 2018 (the "Class Period").  The allegations in this Class Action Complaint (the "Complaint") are based on Plaintiff's personal knowledge as to himself, and on information and belief, including the investigation of counsel, as to all other matters.  The investigation of counsel is predicated upon, among other things: (a) review and analysis of public filings made by the Company with the U.S. Securities and Exchange Commission ("SEC"), for the relevant years; (b) review and analysis of press releases and other publications or statements disseminated or caused to be made or issued by Defendants and other related non-parties; (c) review of media reports concerning the Company; (d) the Complaint filed

1

by the SEC on September 7, 2018, in the United States District Court for the Southern District of New York, charging a number of entities and persons, including Opko and its Chief Executive Officer and Chairman of the Board, Phillip Frost, with violations of the federal securities laws; and (e) review of other publicly available information concerning the Defendants.  Plaintiff believes that substantial, additional evidentiary support for the allegations set forth herein will be obtained after a reasonable opportunity for discovery.

## PARTIES AND JURISDICTION

1. Plaintiff Charles Steinberg is a citizen of the United States and a resident of Philadelphia, Pennsylvania.  He purchased common stock of Opko Health, Inc. on the dates and in the amounts set forth in the attached certification.

2. Defendant Opko Health, Inc. ("Opko") is a Delaware corporation with its principal place of business at 4400 Biscayne Boulevard, Miami, Florida 33137.

3. Defendant Phillip Frost is and has been the Chairman of the Board of Directors and Chief Executive Officer of Opko since March 2007.

4. Defendant Adam Logal has been Opko's Senior Vice President and Chief Financial Officer since March 2014, and previously served as its Vice President and Chief Accounting Officer and Treasurer from July 2012 until March 2014.

5. Defendant Juan Rodriguez served as Opko's Senior Vice President and Chief Financial Officer from July 2012 to April 1, 2014.

6. Defendants Frost, Logal and Rodriguez are collectively referred to as the "Individual Defendants."

7. The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the Company conducts a substantial amount of business through this District, and a substantial part of the events giving rise to the claims in this Complaint took place in this District.

## CLASS ACTION ALLEGATIONS

10. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired Opko common stock during the Class Period from September 26, 2013 through the cessation of trading in its securities on September 7, 2018 and who were damaged thereby (the "Class"). Excluded from the Class are: Defendants; members of their immediate family; any subsidiary or affiliate of Opko and the directors, officers and employees of the Company or its subsidiaries or affiliates or any entity in which any excluded person has a controlling interest; and the legal representatives, heirs, successors and assigns of any excluded person.

11. The members of the Class are so numerous that joinder of all members is impracticable. Opko's common stock was actively traded on the NASDAQ (an open and efficient market) under the symbol "OPK" during the Class Period. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed

Class. As of August 1, 2018, Opko had 559,770,995 shares of Common Stock outstanding. Record owners and the other members of the Class may be identified from records maintained by Opko and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

12. Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

13. Plaintiff will fairly and adequately protect the interests of the other Class members and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that are contrary to or in conflict with those of the members of the Class that Plaintiff seeks to represent.

14. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Further, as damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

15. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (a) whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein; (b) whether Defendants participated in and pursued the common course of conduct complained of herein; (c) whether documents, press releases or other statements disseminated to the investing public and Opko's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of the

Company; (d) whether the market prices of Opko's common stock during the Class Period was artificially inflated due to the material misrepresentations and failure to correct the same complained of herein; and (e) the extent to which the members of the Class have sustained damages and the proper measure of such damages.

16. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## SUBSTANTIVE ALLEGATIONS

17. Defendants were participants in a "pump-and-dump" scheme designed, in part, to artificially inflate the price of various stocks, allowing Defendant Frost, among others, to reap millions of dollars in unlawful profits, in violation of a number of laws, including Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.

18. Defendants never disclosed their participation in these "pump-and-dump" schemes.

19. To the contrary, in each of the quarterly and annual securities filings made by Opko and signed by Frost as Chairman of its Board of Directors and Chief Executive Officer and by Defendants Logal and Rodriguez during their respective tenures as Chief Financial Officer of the Company, Defendants attested to the accuracy of the Company's financial reporting and represented that the financial statements contained no material misrepresentations.

20. The actions in furtherance of this "pump-and-dump" scheme included causing the article entitled "Opko and its Billionaire CEO Invested in Biozone" to appear in *Seeking Alpha* on September 26, 2013. This article promoted the stock of Biozone by citing Frost's ownership in Biozone based on his reputation as a savvy investor in biotech companies. This publication included a statement that the author was not compensated for the article (other than from *Seeking*

*Alpha*), whereas, upon information and belief based upon the SEC's recent complaint, its author had been paid for writing it.

21.   Other actions in furtherance of the "pump-and-dump" scheme also included causing the article entitled "Opko Spots Another Overlooked Opportunity in MabVax Therapeutics" to appear in *Seeking Alpha* on April 8, 2015 in order to promote the stock of MabVax, by using Frost's and Opko's reputation to pump up the stock of MabVax as part of the "pump-and-dump" scheme.  Upon information and belief based upon the SEC's complaint, this article falsely claimed that its author had no business relationship with MabVax and that he was not being compensated for writing it.

## THE TRUTH IS DISCLOSED

22.   In reality, as disclosed on September 7, 2018, when the SEC filed suit in the United States District Court for the Southern District of New York charging a number of entities and persons, including Opko and Frost, with violation of the federal securities laws, defendants had engaged in a "pump-and-dump" scheme to inflate the stock prices of various companies in which Opko and/or Frost had made substantial investments, after which insiders, including Frost, quickly dumped their shares and left public investors holding the bag.

23.   On news of the filing of the SEC's complaint, the price of Opko's shares fell by 18%, from its $5.59 per share close on September 6, 2018, to $4.58 per share, before trading was halted.

24.   A press release issued by the SEC on September 7, 2018 in conjunction with filing that complaint, which stated in part:

> **SEC Charges Microcap Fraudsters for Roles in Lucrative Market Manipulation Schemes**
>
> The Securities and Exchange Commission today charged a group of 10 individuals and 10 associated entities for their participation in long-running fraudulent schemes

that generated over $27 million from unlawful stock sales and caused significant harm to retail investors who were left holding virtually worthless stock.

According to the SEC's complaint, from 2013 to 2018, a group of prolific South Florida-based microcap fraudsters led by Barry Honig manipulated the share price of the stock of three companies in classic pump-and-dump schemes. Miami **biotech billionaire Phillip Frost allegedly participated in two of these three schemes**. Honig allegedly orchestrated the acquisition of large quantities of the issuer's stock at steep discounts, and after securing a substantial ownership interest in the companies, Honig and his associates engaged in illegal promotional activity and manipulative trading to artificially boost each issuer's stock price and to give the stock the appearance of active trading volume. According to the SEC's complaint, Honig and his associates then dumped their shares into the inflated market, reaping millions of dollars at the expense of unsuspecting investors.

"As alleged, Honig and his associates engaged in brazen market manipulation that advanced their financial interests while fleecing innocent investors and undermining the integrity of our securities markets," said Sanjay Wadhwa, Senior Associate Director in the SEC's Division of Enforcement. "They failed to appreciate, however, the SEC's resolve to relentlessly pursue and punish participants in microcap fraud schemes."

**The SEC's complaint**, which was filed in federal district court in Manhattan, **charges** Honig, John Stetson, Michael Brauser, John R. O'Rourke III, Mark Groussman, **Frost**, Elliot Maza, Robert Ladd, Brian Keller, John H. Ford, Alpha Capital Anstalt, ATG Capital LLC, GRQ Consultants Inc., HS Contrarian Investments LLC, Grander Holdings Inc., Melechdavid Inc., **OPKO Health Inc.**, Frost Gamma Investments Trust, Southern Biotech Inc., and Stetson Capital Investments Inc. **with violating antifraud, beneficial ownership disclosure, and registration provisions of the federal securities laws and seeks monetary and equitable relief**. (Emphasis added).

25. On September 11, 2018, Opko announced that trading of its stock had been halted by the Nasdaq Stock Market.

26. As of the filing of this complaint, trading has not resumed in Opko's stock.

**LOSS CAUSATION**

27. As detailed, herein, during the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Opko's common stock and operated as a fraud or deceit on Class Period purchasers of the Company's stock by failing to disclose to investors that the Company's financial results were materially misleading and

7

misrepresented material information. When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Opko's common stock fell precipitously as at least a portion of the prior inflation came out of the Company's stock price. Additional inflation may be established once the stock resumes its trading. As a result of his Class Period purchases of Opko, Plaintiff and the other Class members suffered economic loss.

28. By failing to disclose the true state of the Company's financial statements, including its participation in the "pump-and-dump" scheme alleged in the SEC Complaint, investors were unaware of the true state of the Company's financial and operating status. Therefore, Defendants presented a misleading picture of Opko's business practices and procedures. Thus, instead of truthfully disclosing the true state of the Company's business during the Class Period, Defendants caused Opko to conceal the truth. Defendants' false and misleading statements had the intended effect and caused the Company's common stock to trade at artificially inflated levels throughout the Class Period. The stock price drop discussed herein, and that may continue once the stock resumes trading, has caused and reasonably may continue to cause real economic loss to investors who purchased Opko common stock during the Class Period.

29. The decline in price of Opko's common stock after the truth came out was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Opko's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other members of the Class was a direct result of Defendants' fraudulent scheme to artificially inflate the prices

of Opko securities and the subsequent decline in their value when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Against All Defendants

30. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

31. This Claim is brought pursuant to Section 10(b) of the Securities Exchange Act, 15 U.S.C. §78j(b), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder, on behalf of Plaintiff and all other members of the Class, against all Defendants.

32. Throughout the Class Period, Opko and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and did: (i) deceive the investing public, including Plaintiff and the other members of the Class, as alleged herein; (ii) artificially inflate and maintain the market price of Opko stock; and (iii) cause Plaintiff and other members of the Class to purchase Opko stock at artificially inflated prices.

33. These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of conduct which operated as a fraud and deceit upon the purchasers of Opko securities in violation of § 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. Defendants are sued as primary participants in the wrongful and illegal conducted alleged herein. The Individual Defendants are also sued herein as controlling persons of Opko, as alleged herein.

34. In addition to the duties of full disclosure imposed on Defendants by virtue of their making affirmative statements and reports, or by their participation in the making of affirmative

statements and reports to the investing public, each of the Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the SEC's integrated disclosure provisions, as embodied in SEC Regulation S X, 17 C.F.R. § 210.01, *et seq.*, and S-K, 17 C.F.R. § 229.10, *et seq.*, and other SEC regulations.  This includes truthful information regarding the Company's operations, financial condition and performance so that market prices of Opko's stock would be based on truthful, complete and accurate information.

35.     Throughout the Class Period, Opko and the Individual Defendants, individually, and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce, the mails and the facilities of a national securities exchange, employed devices, schemes and artifices to defraud, made untrue statements of material fact and/or omitted to state material facts necessary to make statements made not misleading, and engaged in acts, practices and a course of business which operated a fraud and deceit upon Class members, in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5(b) promulgated thereunder, as specified herein.

36.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other, and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all

relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

37. These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing Opko's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by their overstatements and misstatements of Opko's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged herein, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

38. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth herein, the market price of Opko securities was artificially inflated during the Class Period. Plaintiff and the other members of the Class who, relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants, acquired Opko securities during the Class Period at artificially inflated prices, and were damaged thereby.

39. At the time of the misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff

and the other Class members and the marketplace known the truth about Opko's business practices, future prospects and intrinsic value, which were not disclosed by Defendants, they would not have purchased or otherwise acquired Opko stock during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

40. By virtue of the foregoing, Opko and the Individual Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

41. As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their Class Period purchases of Opko securities.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants were and acted as controlling persons of Opko within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with Opko, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other

statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities law violations alleged herein, and exercised the same.

45. As set forth above, Opko and the Individual Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable pursuant to Section §20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their purchases of Opko stock during the Class Period.

## JURY TRIAL DEMANDED

46. Plaintiff hereby demands a trial by jury for all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests judgment in his favor and against Defendants as follows:

a. Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b. Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

    c.    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

    d.    Awarding such additional or different relief as the interests of law or equity may require.

DATED: September 14, 2018

**BARRACK, RODOS & BACINE**
Daniel E. Bacine
Mark R. Rosen
Lisa M. Port
*(pro hac vice motion to be filed)*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
dbacine@barrack.com
mrosen@barrack.com
lport@barrack.com

**SAXENA WHITE P.A.**

*By:   /s/ Joseph E. White*
Joseph E. White, III (FL Bar No. 621064)
Kenneth M. Rehns (FL Bar No. 1003357)
150 E. Palmetto Park Road
Suite 600
Boca Raton, FL 33432
Telephone: (561) 394-3399
Fax: (561) 394-3382
jwhite@saxenawhite.com
krehns@saxenawhite.com

Counsel for Plaintiff

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Charles Steinberg, hereby certify, as to the claims under the federal securities laws, that:

1. I am the plaintiff and have reviewed the Complaint filed on my behalf in this matter.

2. I did not purchase the securities of Opko Health Inc. ("Opko") that are the subject of this action at the direction of my attorneys or in order to participate in any action arising under the federal securities laws.

3. I am willing to serve as a lead plaintiff and representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary. I understand the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the class.

4. I purchased 200 shares of Opko common stock on May 18, 2017, at a price of $6.58 per share, and an additional 200 shares of Opko common stock on January 16, 2018, at a price of $4.72 per share. Those purchases are my only purchases of Opko shares during the Class Period set forth in the Complaint filed on my behalf.

5. During the three years prior to the date of this certification, I have not sought to serve and have not been appointed to serve as a representative party on behalf of a class in any action brought under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of September, 2018.

Charles Steinberg