**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:18-cv-23786-MARTINEZ-OTAZO-REYES**

CHARLES STEINBERG, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

v.

OPKO HEALTH, INC., PHILLIP FROST,
ADAM LOGAL, and JUAN RODRIGUEZ,

                Defendants.

**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND**
**LITIGATION EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     ARGUMENT ...................................................................................................... 3

        A.      Under Eleventh Circuit Law, A Reasonable Percentage of the Recovery is
                the Appropriate Method For Awarding Attorneys' Fees .......................... 3

        B.      The Requested Fee of 20% is Fair and Reasonable ................................. 3

        C.      Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval .......... 5

        D.      The Relevant Factors Confirm That the Requested Fee is Fair and
                Reasonable ............................................................................................... 5

                1.      The Time and Labor Required ..................................................... 6

                2.      The Novelty and Difficulty of the Issues .................................... 7

                3.      The Skill, Experience, Reputation and Ability of the Attorneys ............... 9

                4.      The Preclusion of Other Employment ......................................... 9

                5.      The Customary and Contingent Nature of the Fee ................... 10

                6.      The Amount Involved and Results Achieved ........................... 11

                7.      The Undesirability of the Case ................................................. 12

                8.      Awards in Similar Cases ........................................................... 12

                9.      The Time Required to Reach Settlement ................................... 12

                10.     The Reaction of the Settlement Class ....................................... 12

        E.      Lead Counsel's Request for Payment of Litigation Expenses is Fair and
                Reasonable ............................................................................................. 13

        F.      Lead Plaintiff's Request for Payment of Costs Directly Related to Its
                Representation of the Settlement Class Is Fair and Reasonable ............. 14

CONCLUSION .......................................................................................................... 15

i

## TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*In re Anadarko Petroleum Corp. Class Action Litig.*,
   2014 WL 12599393 (S.D. Tex. Sept. 11, 2014) ..................................................................4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................................................10

*Behrens v. Wometco Enterprises, Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .............................10, 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................................................3

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .......................................................................................... *passim*

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   587 F. Supp. 2d 1266 (N.D. Ga. 2008) ................................................................................13

*In re Carter's, Inc. Sec. Litig.*,
   2012 WL 12877943 (N.D. Ga. May 31, 2012) ......................................................................5

*In re Checking Acct. Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................10

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
   954 F. Supp. 2d 276 (S.D.N.Y. 2013)....................................................................................5

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014), ........................................................................5

*City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*,
   2014 WL 12621611 (M.D. Fla. Mar. 4, 2014) ......................................................................5

*City Pension Fund for Firefighters & Police Officers in City of Miami Beach v.
Aracruz Celulose S.A.*, Case No. 08-23317-C-LENARD, slip op. (S.D. Fla.
July 17, 2013), ECF No. 201 ..................................................................................................15

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ...................................................................7, 9

*David v. Am. Suzuki Motor Corp.*,
   2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ........................................................................9

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993)........................................................................................3, 11

*In re Equifax Inc. Customer Data Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ....................................................................7, 10, 14

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2012) ..........................................................................................3, 6, 12

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .........................................................................11

*Flournoy v. Honeywell Int'l, Inc.*,
  2007 WL 1087279 (S.D. Ga. Apr. 6, 2007)..............................................................................4

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ........................................................................14

*In re Friedman's, Inc. Sec. Litig.*,
  2009 WL 1456698 (N.D. Ga. May 22, 2009) .................................................................4, 10, 11

*Gov't. of Guam Ret. Fund v. Invacare Corp.*,
  2015 WL 12766465 (N.D. Ohio. Nov. 19, 2015) .....................................................................4

*In re HealthSouth Corp. ERISA Litig.*,
  2006 WL 2109484 (N.D. Ala. June 28, 2006)..........................................................................4

*Hirsch v. PSS World Medical, Inc.*,
  Case No. 3:98-cv-502-J-32TEM, slip op. (M.D. Fla. Dec. 20, 2005),
  ECF No. 300 ...............................................................................................................................4

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001)...............................................................................................7

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .....................................................................................................6

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) .................................................................................................10

*Mazur v. Lampert*,
  Case No. 04-61159-CIV-LENARD/GARBER, slip op. (S.D. Fla. June 19,
  2008), ECF No. 130 ..................................................................................................................15

*McGuire v. Dendreon Corp.*,
  2010 WL 11530602 (W.D. Wash. Dec. 20, 2010) ....................................................................5

*Miller v. Dyadic Int'l, Inc.*,
  2010 WL 11591815 (S.D. Fla. July 28, 2010) .........................................................................15

*In re NetBank, Inc. Sec. Litig.*,
   2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ...................................................7, 13

*In re Novatel Wireless Sec. Litig.*,
   No. 08-cv-01689-AJB (RBB), slip op. (S.D. Cal. June 23, 2014),
   ECF No. 520 ................................................................................................4

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) .............................................................7, 10

*In re QSI Sys., Inc. Sec. Litig.*,
   No. 13-cv-01818-CJC-JPR, slip op. (C.D. Cal. Nov. 19, 2018), ECF No. 120 .......................4

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992)....................................................................7, 10

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997), ......................................................................10

*Stahl v. MasTec, Inc.*,
   2008 WL 2267469 (M.D. Fla. May 20, 2008).............................................................4

*In re Synovus Fin. Corp.*,
   2014 WL 12756149 (N.D. Ga. Nov. 18, 2014) ...........................................................14

*Taft v. Ackermans*,
   2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ..............................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...................................................................................11

*In re Terazosin Hydrochloride Antitrust Litig.*,
   2005 WL 2451958 (S.D. Fla. July 8, 2005)..............................................................4

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 WL 10518902 (S.D. Fla. Oct. 14, 2016).............................................................4

*In re Walter Energy, Inc. Sec. Litig.*,
   2016 WL 7230505 (N.D. Ala. May. 3, 2016)..............................................................4

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ......................................................................3, 6

**STATUTES**

Private Securities Litigation Reform Act of 1995,
   15 U.S.C. § 78u-4(a)(4) ...............................................................................14

iv

Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") respectfully moves, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees in the amount of 20% of the Settlement Fund, or $3,300,000 plus interest earned at the same rate as earned by the Settlement Fund.  Lead Counsel also seeks $143,841.54 for Litigation Expenses paid or incurred by Plaintiffs' Counsel and Israeli Counsel, as well as payment of $17,500 for costs incurred by Lead Plaintiff the Amitim Funds directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## MEMORANDUM OF LAW

## I.    PRELIMINARY STATEMENT

The proposed Settlement, which provides for a cash payment of $16,500,000 in exchange for the resolution of all claims in the Action, represents an excellent result for the Settlement Class. The significant recovery was achieved only after an extensive investigation, hard-fought litigation, and lengthy negotiations by experienced attorneys that specialize in securities litigation.   In undertaking this litigation on a fully contingent basis, counsel faced numerous challenges to proving both liability and damages that raised serious risks of no recovery, or a significantly lesser recovery than the Settlement, for the Settlement Class.

The successful prosecution and settlement of this litigation required diligent efforts on the part of counsel.  As detailed in the accompanying Rizio-Hamilton Declaration, Lead Counsel and the other Plaintiffs' Counsel vigorously pursued this litigation from its outset by, among other things: (i) conducting a comprehensive investigation into the claims asserted in the Action, which included a thorough review of SEC filings, analyst reports, conference call transcripts, press releases, company presentations, media reports and other public information, including a detailed analysis of the related SEC Action; consultation with experts; and interviews with numerous former employees of OPKO and other potential witnesses (¶¶ 19-21); (ii) researching, drafting, and filing the detailed Consolidated Class Action Complaint (the "Complaint") (¶ 22); (iii) fully

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated June 26, 2020 (ECF No. 112-1) (the "Stipulation") or in the Declaration of John Rizio-Hamilton in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Rizio-Hamilton Declaration" or "Rizio-Hamilton Decl.").  Citations to "¶ __" in this memorandum refer to paragraphs in the Rizio-Hamilton Declaration and citations to "Ex. __" refer to exhibits in the Rizio-Hamilton Declaration.

briefing Lead Plaintiff's opposition to Defendants' motion to dismiss (¶¶ 23-28); and (iv) engaging in extensive settlement negotiations, including participating in a full-day mediation session, under the auspices of an experienced and highly respected mediator, Jed D. Melnick (¶¶ 29-33).

The Settlement achieved through counsel's efforts is a particularly favorable result considering the significant hurdles that Lead Plaintiff would have had to overcome to prevail in this complex securities fraud litigation.  As further detailed below and in the Rizio-Hamilton Declaration, counsel faced numerous substantial challenges in establishing liability, loss causation, and damages in the Action.  Despite these risks, Plaintiffs' Counsel collectively worked nearly 2,900 hours over the course of the litigation to achieve the Settlement, all on a contingent-fee basis with no assurance of ever being paid.

As compensation for Plaintiffs' Counsel's considerable efforts on behalf of the Settlement Class and the risks of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel seeks attorneys' fees in the amount of 20% of the Settlement Fund.[2]  The requested 20% fee is below the "benchmark" fee established for percentage fee awards in the Eleventh Circuit and is on the low end of the range of fees that courts in this Circuit have awarded in securities and other complex class actions with comparable recoveries on a percentage basis.  The requested fee also represents a multiplier of just 1.76 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

In addition to the attorneys' fees, Lead Counsel seeks payment for $143,841.54 expenses that Plaintiffs' Counsel and Israeli Counsel reasonably incurred in connection with the prosecution of the Action or the related Israeli action that will be resolved through this Settlement, and reimbursement of $17,500 in costs incurred by Lead Plaintiff directly related to its representation of the Settlement Class.

The application for fees and expenses has the full support of Lead Plaintiff.  *See* Declaration of Ronen Hirsch on behalf of the Amitim Funds (Ex. 2) (the "Hirsch Decl."), at ¶¶ 7-8.  Lead

---

[2] Plaintiff's Counsel are Lead Counsel BLB&G and liaison counsel, Saxena White P.A.  In addition, Plaintiffs' Counsel will share a portion of the fees awarded with two Israeli firms, Kalai Rosen & Co., Advocates and Amit Manor - Yuki Shemesh, Advocates (collectively, "Israeli Counsel"), which brought a related action in Israel that will be resolved by this Settlement and are assisting Lead Counsel with matters related to the distribution of settlement funds to Israeli investors.  ¶ 10 n.2.

Plaintiff is a sophisticated institutional investor that actively supervised the Action and has endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *Id.* ¶¶ 2-5, 7.   In addition, while the deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the request for fees and expenses have been received.  Rizio-Hamilton Decl. ¶¶ 101, 111.

For all the reasons discussed in this memorandum and in the Rizio-Hamilton Declaration, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable.

## II.    ARGUMENT

### A.    Under Eleventh Circuit Law, A Reasonable Percentage of the Recovery is the Appropriate Method For Awarding Attorneys' Fees

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).   "The purpose of awarding fees is to compensate successful attorneys for the benefits they have achieved for the class as a result of the attorneys' efforts, for the risks the attorneys have taken in prosecuting a long and complex case, and for the hours and expenses the attorney has invested in the case."  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 353 (N.D. Ga. 1993).

In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2012); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999).

### B.    The Requested Fee of 20% is Fair and Reasonable

The Eleventh Circuit has established 25% of the settlement fund as a "benchmark" (and presumptively reasonable) fee award in common-fund cases.  *See Faught*, 668 F.3d at 1243 ("25% is generally recognized as a reasonable fee award in common fund cases"); *Camden I*, 946 F.2d at 774-75 ("[t]he majority of common fund fee awards fall between 20% to 30% of the fund," and district courts consider the middle of that range—25%—as a "benchmark" that "may be adjusted

in accordance with the individual circumstances of each case"); *Flournoy v. Honeywell Int'l, Inc.*, 2007 WL 1087279, at *1 (S.D. Ga. Apr. 6, 2007) ("the appropriate standard for fee awards in common fund cases is a percentage of the fund . . . with the benchmark award being twenty-five percent").  Here, the requested fee of 20% of the Settlement Fund, which has been agreed to by sophisticated institutional investor Lead Plaintiff, is substantially below the 25% benchmark, even though, as discussed below, the circumstances in the case, including the substantial contingency risks in the Action, could support an upward adjustment from the benchmark.

Further, a review of percentage fee awards approved by Courts within this Circuit in complex common fund cases involving comparable recoveries confirms that the 20% fee sought by Lead Counsel is on the low end of the range of percentage fees awarded in comparable cases. *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8-*9 (S.D. Fla. Oct. 14, 2016) (awarding 33.3% of $24 million settlement, noting that "[i]n recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of 30% or 33% of the settlement fund," and finding that "30% is an appropriate benchmark here, given the complexity of this matter and the skill that is required"); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1 (N.D. Ala. May. 3, 2016) (awarding 33% of $25 million settlement); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *4 (N.D. Ga. May 22, 2009) (awarding 30% of $14.9 million settlement); *Stahl v. MasTec, Inc.*, 2008 WL 2267469, at *2 (M.D. Fla. May 20, 2008) (awarding 27.9% of $13.1 million settlement); *Flournoy*, 2007 WL 1087279, at *2-3 (awarding 25% of $25 million settlement); *In re HealthSouth Corp. ERISA Litig.*, 2006 WL 2109484, at *6-7 (N.D. Ala. June 28, 2006) (awarding 25% of $28.9 million settlement); *Hirsch v. PSS World Medical, Inc.*, Case No. 3:98-cv-502-J-32TEM, slip op. at 1 (M.D. Fla. Dec. 20, 2005), ECF No. 300 (Ex. 6) (awarding 30% of $16.5 million settlement); *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 2451958, at *2 (S.D. Fla. July 8, 2005) (awarding 30% of $28.7 million settlement).  In addition, the 20% fee request is also consistent with, or below, the fees awarded by courts in other Circuits in similarly sized securities class action settlements.[3]

---

[3] *See, e.g., In re QSI Sys., Inc. Sec. Litig.*, No. 13-cv-01818-CJC-JPR, slip op. at 2 (C.D. Cal. Nov. 19, 2018), ECF No. 120 (Ex. 7) (awarding 25% of $19 million settlement); *Gov't. of Guam Ret. Fund v. Invacare Corp.*, 2015 WL 12766465, at *1 (N.D. Ohio. Nov. 19, 2015) (awarding 25% of $11 million settlement); *In re Anadarko Petroleum Corp. Class Action Litig.*, 2014 WL 12599393, at *1 (S.D. Tex. Sept. 11, 2014) (awarding 25% of $12.5 million settlement); *In re Novatel Wireless Sec. Litig.*, No. 08-cv-01689-AJB (RBB), slip op. at 1 (S.D. Cal. June 23, 2014), ECF

In sum, when judged against the Eleventh Circuit benchmark, and compared to fees awarded in class action settlements of similar magnitude, the requested 20% fee is fair and reasonable.

### C.    Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval

Lead Plaintiff is a sophisticated institutional investor that took an active role in the litigation and supervised the work of Lead Counsel. *See* Hirsch Decl. ¶¶ 2-5. Lead Plaintiff has approved the requested fee as fair and reasonable in light of the work performed, the recovery obtained for the Settlement Class, and the risks associated with continuing to litigate the Action. *Id* ¶ 7. Lead Plaintiffs' endorsement of the fee as reasonable supports approval of the fee. *See City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*, 2014 WL 12621611, at *2 (M.D. Fla. Mar. 4, 2014) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor that was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Lead Plaintiff's Counsel are duly earned and not excessive"); *In re Carter's, Inc. Sec. Litig.*, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (same).

### D.    The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable

In *Camden I*, the Eleventh Circuit recommended that district courts consider several factors in determining whether a requested percentage fee award is reasonable, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

No. 520 (Ex. 8) (awarding 27.5% of $16 million settlement); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *12-*13 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013) (awarding 25% of $19.5 million settlement); *McGuire v. Dendreon Corp.*, 2010 WL 11530602, at *1 (W.D. Wash. Dec. 20, 2010) (awarding 25% of $16.5 million settlement); *Taft v. Ackermans*, 2007 WL 414493, at *10-11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement).

946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  A court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action."  *Id.* at 775.

Although the Eleventh Circuit has since stated that a full analysis of the *Johnson* and other factors is only necessary if the fee request exceeds 25%, *see Faught*, 668 F.3d at 1242, which it does not here, Lead Counsel submits that these factors, if considered, provide further support for approval of the 20% fee request.

### 1.    The Time and Labor Required

The time and diligent effort expended by Plaintiffs' Counsel to achieve the Settlement supports the requested fee.  Lead Counsel committed extensive resources to developing Lead Plaintiff's claims though investigation, litigation, and settlement negotiation.  As discussed in greater detail in the Rizio-Hamilton Declaration, Lead Counsel, among other things: (i) conducted a comprehensive factual investigation of the claims at issue in the Action, which included a detailed review of public documents, the review and analysis of a detailed SEC complaint based on a regulatory investigation, and interviews with dozens of possible witnesses (¶¶ 19-21); (ii) prepared and filed a detailed consolidated complaint based on this investigation (¶ 22); (iii) fully briefed Defendants' motion to dismiss (¶¶ 23-28); (iv) consulted extensively with experts in damages, loss causation, and financial valuation (¶¶ 21, 106); and (v) participated in extensive settlement negotiations overseen by an experienced mediator, including a full-day mediation session and extended follow-up discussions (¶¶ 29-33).

In total, Plaintiffs' Counsel expended 2,898.75 hours in this litigation with a resulting lodestar of $1,876,713.75.  ¶ 92.  The time and labor expended by Plaintiffs' Counsel amply support the requested fee.

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 20% award.  *See, e.g.*, *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").  Here, based on the $16.5 million Settlement Fund, the requested 20% fee award (or $3,300,000 before interest),

represents a multiplier of approximately 1.76 on Plaintiffs' Counsel's total lodestar.[4]  Given that multipliers between 2 and 5 are commonly awarded in complex class actions with substantial contingency risks, the multiplier requested here confirms the reasonableness of the requested fee. *See, e.g.*, *In re Equifax Inc. Customer Data Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Jan. 13, 2020) (awarding fee representing 2.62 multiplier and describing it as "consistent with multipliers approved in other cases"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 & n.4 (N.D. Ga. Oct. 26, 2012) (noting that multiplier of 4 times lodestar is "well within" the accepted range); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (finding that lodestar multipliers "in large and complicated class actions" tend to range from 2.26 to 4.5) (citations omitted); *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4).

## 2.     The Novelty and Difficulty of the Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992), and "securities class action litigation is 'notably difficult and notoriously uncertain,'" *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at * 3 (N.D. Ga. Nov. 9, 2011). This Action was no exception.

As further detailed in the Rizio-Hamilton Declaration, to which the Court is respectfully referred, Lead Plaintiff and Lead Counsel faced a number of substantial challenges to establishing liability and proving damages in this Action from the outset.  ¶¶ 36-53.  Defendants contested their liability on falsity and scienter grounds, and disputed loss causation and damages.  With respect to the issue of falsity, Lead Counsel knew from the outset of the case that they faced real challenges in proving that Defendants' statements were false, which necessitated, among other things, proving that Defendants knowingly participated in the alleged pump-and-dump schemes described in the SEC complaint.  ¶ 40.  The SEC complaint that formed the central basis of the claims consisted of only unproven allegations, Defendants vigorously denied any such participation, and the SEC Action was resolved without any admission of fraudulent conduct by OPKO or Dr. Frost. Defendants contended that the SEC complaint's allegations about OPKO and Dr. Frost's involvement were factually flawed and that the actual facts would not support Lead Plaintiff's

---

[4] The multiplier is calculated by dividing the $3,300,000 fee request by the $1,875,713.75 in lodestar that Plaintiffs' Counsel incurred.

fraud claims, but would show that Defendants were unaware of the alleged stock manipulation. ¶¶ 40, 44-45.

Defendants contended that the SEC complaint identified a different individual as the primary strategist who orchestrated the alleged stock manipulation schemes, and contained only sparse allegations about OPKO and Dr. Frost's involvement, and no allegations that investors in OPKO were misled.  ¶¶ 44, 46-47.  Moreover, Defendants pointed to the fact that OPKO and Dr. Frost did not engage in any coordinated trading to "pump" the stocks at issue; OPKO did not sell any of the stock of the two companies at issue; Dr. Frost did not sell any stock in one of the two companies at issue and sold only small portions of his holdings in the other company; that both Defendants continued to invest heavily in the companies after the purported stock manipulation; and that Dr. Frost continued to purchase OPKO shares during the Class Period.  ¶¶ 40, 45.  Defendants would argue that these facts made it implausible that Defendants were involved in the scheme, demonstrated that their statements were not false, and undercut any inference they acted with scienter.  *Id*.  To overcome these arguments would have required marshalling complex facts and persuading a jury, who might be predisposed in favor of Dr. Frost, a well-known benefactor of cultural institutions in the Miami area. ¶ 48.

Lead Plaintiff would also have had to overcome substantial arguments on loss causation and damages.  Defendants argued that Lead Plaintiff could not establish loss causation because the SEC complaint could not act as a corrective disclosure of the alleged misstatements.  In support of this argument, Defendants contended that: (1) the SEC complaint contained only unproven allegations, which could not act as a corrective disclosure under Eleventh Circuit law, and (2) the underlying facts in the SEC complaint about OPKO and Dr. Frost's investments in the companies whose stocks were allegedly manipulated were already known to the market and, thus, the SEC complaint did not disclose any new material information relevant to the alleged misstatements. ¶¶ 50-53.  If either of these loss causation arguments had been accepted, Lead Plaintiff and the class would have been precluded from recovering any damages.  ¶¶ 50, 52, 62.  These loss causation and damages issues would have required substantial work by Plaintiffs' Counsel, together with experts retained by Lead Plaintiff, to rebut and overcome Defendants' arguments. ¶¶ 63, 99.

Thus, Lead Counsel faced multiple difficult and significant obstacles in prosecuting this Action.  However, notwithstanding these obstacles, Lead Counsel achieved an excellent result for

the Settlement Class.  Success in the face of these obstacles strongly supports the requested fee award.

### 3.    The Skill, Experience, Reputation and Ability of the Attorneys

Under these factors, the court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved.  *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall*, 2012 WL 12540344, at *4 ("The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation.").

From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class.  As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation.  Lead Counsel practices extensively in the highly challenging field of complex class action litigation and is one of the nation's leading securities class action litigation firms.  *See* Rizio-Hamilton Decl. ¶ 94 and Ex. 4A-3.  Without question, Lead Counsel's skills and experience were an important factor in obtaining the favorable result achieved in this Settlement.

This Court should also consider "the quality of the opposition" the plaintiff's attorneys faced in awarding Lead Counsel a fee.  *See Columbus Drywall*, 2012 WL 12540344, at *4.  Here, Defendants were represented by experienced and extremely able counsel from a number of prominent law firms, including Akerman LLP, Cleary Gottlieb Steen & Hamilton LLP, Morvillo Abramowitz Grand Iason & Anello P.C., and King & Spalding LLP, all of whom vigorously represented their clients.  ¶ 95.  Lead Counsel's ability to obtain a favorable outcome for the Settlement Class despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided here.  Accordingly, this factor also supports the fee requested.

### 4.    The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—nearly 2,900 hours (¶ 92)—was time that Plaintiffs' Counsel could not devote to other matters.  Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would be successful or that they would ever be compensated for their hard work.  Accordingly, this factor also supports the requested fee.

**5.      The Customary and Contingent Nature of the Fee**

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no class member possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis.  *See Ressler*, 149 F.R.D. at 654.

The contingent nature of Plaintiffs' Counsel's fees should be given substantial weight in assessing the requested fee award.  Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining the award of attorneys' fees:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee . . . and the fact that the risks of failure and nonpayment in a class action are extremely high.  Cases recognize that attorneys' risk is "perhaps the foremost' factor" in determining an appropriate fee award.

*Pinto*, 513 F. Supp. 2d at 1339; *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("[T]he contingent fee risk is an important factor in determining the fee award."); *Friedman's*, 2009 WL 1456698, at *3 ("The contingent nature of fees in this case should be given substantial weight in assessing the requested fee award."); *Ressler*, 149 F.R.D. at 654-55 ("The substantial risks of this litigation abundantly justify the fee requested . . . .").  "A contingency fee arrangement often justifies an increase in the award of attorneys' fees," *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "because if the case is lost a lawyer realizes no return for investing time and money in the case." *Equifax*, 2020 WL 256132, at *33; *see also Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

Success in contingent litigation such as this is never assured.  In other cases, plaintiffs' counsel in shareholder litigation have suffered major defeats after years of litigation in which they expended millions of dollars of time and received no compensation at all.  Even a victory at trial is not a guarantee of success.  *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997), *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class estimated at $42 million, and granting judgment as a matter of law in favor of defendants).

As noted above and discussed in detail in the Rizio-Hamilton Declaration (¶¶ 36-65) and the Settlement Memorandum (pages 9-13), Lead Plaintiff's claims in this Action faced multiple hurdles that could have precluded or substantially limited any recovery. Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result, and that such a result would be realized, if at all, only after considerable and difficult effort. Thus, the substantial risks of the Action also justify the requested fee.

Moreover, the award of appropriate attorneys' fees is particularly important in federal securities cases to ensure that private enforcement of the federal securities laws remains an effective method of protecting investors:

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged. If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements — often the only means of legal representation available given the incredible expense associated with these actions — must be promoted.

*Behrens*, 118 F.R.D at 548 (citations omitted). The Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010).

### 6.      The Amount Involved and Results Achieved

"It is [also] well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Friedman's*, 2009 WL 1456698, at *3 (alteration in original); *see also Domestic Air*, 148 F.R.D. at 351 ("The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel.").

As noted above, the excellent result obtained here was accomplished despite the substantial difficulties of proving liability for securities fraud and the risks of establishing loss causation and damages in this case. In sum, the significant recovery obtained in this Action also supports approval of the requested fee.

### 7.     The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee.  While Lead Counsel does not believe the case was undesirable, there are significant risks inherent in financing and prosecuting complex litigation of this type.  When Lead Counsel undertook representation of Lead Plaintiff in this Action, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms.

### 8.     Awards in Similar Cases

As discussed above in Section II.B, Lead Counsel's requested fee of 20% is below the presumptively fair and reasonable benchmark fee awarded in class action cases in this Circuit.  *See Faught*, 668 F.3d at 1242; *Camden I*, 946 F.2d at 774-75.  Moreover, as also shown above, courts in this Circuit have frequently awarded higher percentage fees in comparable class action settlements.  *See* Section II.B, *supra*.  Thus, this factor strongly supports the reasonableness of the requested fee.

### 9.     The Time Required to Reach Settlement

The Settlement was achieved only after extensive investigation of the claims asserted, full briefing on Defendants' motion to dismiss, and extended settlement negotiations.  While the proposed settlement was reached before the resolution of the motion to dismiss, Plaintiffs' Counsel had already dedicated nearly 2,900 hours on the prosecution of the claims and the negotiation of the Settlement, which further supports the requested fee award.

### 10.     The Reaction of the Settlement Class

Through November 9, 2020, more than 249,000 copies of the Notice had been mailed to potential Settlement Class Members and their nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire*.  *See* Declaration of Luiggy Segura submitted by the Court-approved Claims Administrator, JND (Ex. 3) (the "Segura Decl."), at ¶¶ 2-9.  The Notice advised Settlement Class Members that Lead Counsel would apply for fees not to exceed 20% of the Settlement Fund.  While the deadline for filing objections to the fee

application is not until November 24, 2020, to date, no objections to the requested fee have been filed. ¶ 101.[5]

    **E.**    **Lead Counsel's Request for Payment of Litigation Expenses is Fair and Reasonable**

Lead Counsel also requests payment of $143,841.54 for the Litigation Expenses incurred by Plaintiffs' Counsel in prosecuting the Action.  The request also includes expenses incurred by Israeli Counsel either in connection with a related Israeli action that will be resolved through this Settlement or in assisting Lead Counsel in this Action with matters related to distribution of the Settlement Fund to members of the Settlement Class who purchased OPKO common stock on the TASE.

It is well-established that "class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *see also NetBank*, 2011 WL 13353222, at *4 ("It has long been held that "'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action."").

The expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, costs for experts, on-line research, court fees, telephone, photocopying, postage, and out-of-town travel.  ¶¶ 105-109.  The largest expense, in the amount of $78,956.50 or 55% of the total litigation expenses, was for retention of experts, which included an expert on damages on loss causation and a valuation consultant engaged to assist Lead Counsel in determining OPKO's ability to pay.  ¶ 106.  The combined costs for on-line legal and factual research, in the amount of $39,308.92, represent 27% of the total amount of expenses.  ¶ 107.  In addition, Lead Counsel expended $15,508.92, or 11% of the total litigation expenses, for Mr. Melnick's mediation fees.  ¶ 108.  A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel and Israeli Counsel is included in Exhibit 5 to the Rizio-Hamilton Declaration. These expense items were charged separately by counsel, and such charges were not duplicated in the firms' hourly rates.

---

[5] Should any objections be filed, they will be addressed in Lead Counsel's reply papers to be filed on December 8, 2020.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $300,000, which might include the costs and expenses of Lead Plaintiff directly related to its representation of the Settlement Class. *See* Notice ¶¶ 5, 53.  The total amount of expenses requested by Lead Counsel is $161,341.54, which includes $143,841.54 for Litigation Expenses incurred by counsel and $17,500 for costs and expenses incurred by Lead Plaintiff in its representation of the Settlement Class, an amount substantially below the figure listed in the Notice.  To date, there has been no objection to the request for expenses.

Because the Litigation Expenses incurred are reasonable and of the type for which payment is routinely ordered in common fund, the requested expenses should be approved.  *See Equifax*, 2020 WL 256132, at *40 (awarding expenses "for such items as court reporter fees; document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings and hearings; paying the mediator; and other customary expenditures" and finding that such expenses "are reasonable and were necessarily incurred on behalf of the class").

### F.    Lead Plaintiff's Request for Payment of Costs Directly Related to Its Representation of the Settlement Class Is Fair and Reasonable

In connection with its request for reimbursement of Litigation Expenses, Lead Counsel also seeks payment for the costs and expenses incurred by the Amitim Funds in its representation of the Settlement Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, the Amitim Funds seeks an award of $17,500 for the time dedicated by its employees, in supervising and participating in the Action.  *See* Hirsch Decl. ¶¶ 9-10.  The Amitim Funds took an active role in the litigation, including, among other things, reviewing significant pleadings and briefs filed in the Action; communicating regularly with Lead Counsel regarding developments in the Action; and evaluating and approving the Settlement.  *Id*. ¶¶ 5, 10.

Courts in this Circuit have routinely approved reasonable awards to compensate lead plaintiffs in securities class actions for the time and effort they spent on behalf of a class.  *See, e.g.*, *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding plaintiffs $20,000 total "as reimbursement for [their] reasonable costs and expenses directly related to [their] representation of the Settlement Class"); *In re Synovus Fin. Corp.*, 2014 WL 12756149, at *1 (N.D. Ga. Nov. 18, 2014) (awarding a total of $15,200 to two institutional lead plaintiffs);

*City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celulose S.A.*, Case No. 08-23317-C-LENARD, slip op. at 8 (S.D. Fla. July 17, 2013), ECF No. 201 (Ex. 9) (awarding Lead Plaintiff $40,000 for "its reasonable costs and expenses incurred in representing the Class during the prosecution of this Action"); *Miller v. Dyadic Int'l, Inc.*, 2010 WL 11591815, at *2 (S.D. Fla. July 28, 2010) (awarding Lead Plaintiff $32,000 for "reimbursement of its time and expenses in assisting in the prosecution of this action," including 160 hours at a rate of $200 per hour); *Mazur v. Lampert*, Case No. 04-61159-CIV-LENARD/GARBER, slip op. at 5 (S.D. Fla. June 19, 2008), ECF No. 130 (Ex. 10) (awarding Lead Plaintiff $40,000).

The requested award sought by Lead Plaintiff is reasonable and justified under the PSLRA based on its involvement in the Action from inception to settlement, and should be granted.

## CONCLUSION

For the reasons discussed above and in the Rizio-Hamilton Declaration, Lead Counsel respectfully request that the Court: (i) award attorneys' fees to Plaintiffs' Counsel in the amount of 20% of the Settlement Fund, or $3,300,000, plus interest earned at the same rate as earned by the Settlement Fund; (ii) award $143,841.54 in payment of the reasonable Litigation Expenses incurred by Plaintiffs' Counsel and Israeli Counsel; and (iii) award $17,500 as payment for the costs incurred by Lead Plaintiff directly relating to its representation of the Settlement Class.

Dated: November 10, 2020                    Respectfully submitted,

                                            **SAXENA WHITE P.A.**

                                            */s/ Brandon T. Grzandziel*
                                            Joseph E. White, III
                                            Brandon T. Grzandziel
                                            7777 Glades Road
                                            Suite 300
                                            Boca Raton, FL 33434
                                            Telephone: (561) 394-3399
                                            Facsimile: (888) 478-6711
                                            Email: jwhite@saxenawhite.com
                                            Email: brandon@saxenawhite.com

                                            *Liaison Counsel for Lead Plaintiff The Amitim Funds*

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

*/s/ John Rizio-Hamilton*
Avi Josefson (*pro hac vice*)
John Rizio-Hamilton (*pro hac vice*)
Adam D. Hollander (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: avi@blbglaw.com
Email: johnr@blbglaw.com
Email: adam.hollander@blbglaw.com

*Lead Counsel for Lead Plaintiff The Amitim
Funds*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 10, 2020, a copy of the foregoing was filed with the

Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of

electronic filing to all parties of record.

*/s/ Brandon T. Grzandziel*
Brandon T. Grzandziel